**From:** Robert Doane robertdoane@rcn.com
**Subject:** Doane v. 1-800 Remodel et al.
**Date:** March 13, 2018 at 5:30 PM
**To:** 13239329699@myfax.com, Alan Hirsch ahirsch@1800remodel.com
**Cc:** Reilinglaw reilinglaw@aol.com, dpastor@pastorlawoffice.com

Mr. Hirsch,

Your company has been implicated yet again in illegal calls to my cellphone. Ive pretty much lost my patience with this. Absent hearing from you within five days with respect to the TCPA and MTSA claims, you will be dealing with my attorneys and likely a class action, to which ill be happy to offer myself as class representative. If you wish to discuss, you may call me for that purpose.



Microsoft Word - 1800...d.docx

(Dictated but not read.)

Robert A. Doane

Martha's Vineyard Residences
21 New Lane & 70 Blackthorn Road
West Tisbury, MA 02568

Mailing address
103 Prospect street
Wakefield, MA 01880

Tel: 781-245-6577
Fax: 888-712-2724

This email and/or facsimile and any included attachments are intended only for the addressee(s).  Nothing in this email and/or facsimile shall be considered to have established any kind of business relationship. The information contained herein may include privileged or otherwise confidential information.  Unauthorized review, forwarding, printing, copying, distributing, or using this information is strictly prohibited and unlawful.  If you receive this message in error, or have reason to believe you are not authorized to receive it, please immediately notify the sender by email and then promptly delete this email and/or facsimile, or destroy as the case may be. If this email is received by anyone believing there has been established a business relationship whereby they would be authorized to contact me via telephone, text messaging, or otherwise (excluding email), such is hereby revoked, as is any prior consent that may have been construed to have been given. Any telephone contact made to me by the recipient of this email, absent a statement in the email authorizing such phone contact, may be considered a telephone solicitation made without consent. Thank you.

# ROBERT A. DOANE

Martha's Vineyard Residence
Twenty-One New Lane and Seventy Blackthorn Road
West Tisbury, MA 02575

———

robertdoane@rcn.com

Mailing Address

103 Prospect Street                                                          Tel: 781-245-6577
Wakefield, MA 01880                                                  Facsimile 888.712.2724

13 March 2018

## CONFIDENTIAL AND URGENT

*Sent by Facsimile (1-323-932-9699), and*
*E-Mail: ahirsch@1800remodel.com*

Alan Hirsch, et al
Chief Executive Officer
1-800-Remodel, Inc.
5455 Wilshire Blvd., Suite 2015
Los Angeles, CA 90036

      RE:    Immediate demand under the Federal Telephone Consumer Protection Act; and the Massachusetts Telephone Solicitation Act; and 30-day demand under the Massachusetts Consumer Protection Act

Mr. Hirsh:

      This letter is directed to 1-800-Remodel, Inc., and to each of its officers in their individual capacities, namely, Alan Hirsch (CEO), Chani Edelstein (CFO), Benjamin Simon, (CTO), David Hirsch (COO), and Kevin Gutierrez (Call Center/Quality Control Manager) (collectively "1-800-Remodel").

      1-800-Remodel and its coconspirators have again been determined responsible for, among other things, causing numerous calls to my cellphone in violation of the Telephone Consumer Protection Act 47 U.S.C. §227, et seq. ("TCPA"), and the Massachusetts Telephone Solicitation Act, G.L. c 159C, et seq. ("MTSA"), both *per se* violations of the Massachusetts Consumer Protection Act, G.L. c. 93A et seq.

      Specifically, 1-800-Remodel, over the course late 2017 and early 2018, in an attempt to solicit the sales of home improvement, in a conspiracy with what appear to be overseas call centers, caused, without my prior express written consent, not less than twenty-five (25) calls to my cellphone (781-245-6577), listed on the Federal Trade Commission's do-not-call registry using automatic telephone dialing system ("ATDS"), and spoofing, i.e., deceptive caller identification that conceals the identity of the calling party, all in violation of various civil and criminal provisions of the TCPA and the MTSA, and also in violation of G.L. c. 93A. The spoofed calls, using a variety of bogus numbers, would often be preceded by one or two calls with one or two rings before dropping, and on occasions there was time to answer, a pause, click, and "boop" sound was heard before a live agent got on the line, all facts

characteristic of ATDS. In each instance the agents identified themselves as an inexistent company, and claimed they were the home improvers without disclosing their true identity or that they were calling on behalf of others. Demands that the calls top were ignored. Demands for the do not call policy were ignored. The calls continued despite all efforts to get them to stop. After finally having enough, interest was – without providing consent to anyone other than the telemarketer – expressed in an attempt to identity the callers. Initially, my 6577 number was provided, and the interest resulted in no calls from others, yet the offending callings using spoofed numbers continued to call. Finally, during one of these calls, a second number was provided (781-504-2552), to continue the discussion, with a demand they stop calling my 6577 number – hoping this would stop the calls to my 6577 number. The same caller then called my 2552 number, and after the caller disclosed a list of the services they provide, and interest – without providing consent – was expressed (in windows), 1-800 Remodel then began calling the 2552 number directly, not less than four (4) times, establishing a link between the not less than twenty-five calls made to my 6577 number that preceded the calls to my 2552 number.

### 1-800 Remodel's games will end.

As you are aware from experience, a private right of action exists pursuant to 47 U.S.C.A. § 227(c)(5) of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 for violation of the Federal Communications Commission's (FCC) national do-not-call registry, 47 C.F.R. § 64.1200(c)(2) and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), and regulations promulgated pursuant to the TCPA protection of telephone subscriber privacy rights provisions, 47 U.S.C. § 227(c)(1) to (4). 47 C.F.R. § 64.1200(c) and (d) sets forth certain procedures with which a telemarketer must comply prior to the initiation of a telemarketing call. Prior to initiating telemarketing calls, the person or entity placing the call must adopt specific standards. *Id*. For example, the telemarketer "must have a written policy, available upon demand, for maintaining a do-not-call list." A violation of subsection (d) gives rise to TCPA liability under 47 U.S.C. § 227(c)(5).

1-800 Remodel's conduct violates numerous provisions of the TCPA and the regulations promulgated thereunder, with each violation subject to separate statutory damages of not less than $500 for negligent violations, and not more than $1,500 for willful and knowing violations. It is a violation of 47 U.S.C. §227(b)(1)(A)(iii) to cause, without prior express written consent, a cellphone to be called using an automatic telephone dialing system ("ATDS") and/or a prerecorded message. Cellphone are completely off limits for automated calls. See 47 C.F.R. § 64.1200(a)(iii). Failing to state the "individual, or other entity that is responsible for initiating the call," and the contact phone number, is also a violation. See 47 C.F.R. § 64.1200(b)(1)(2). Violations of these provisions provides a basis for statutory damages under 47 U.S.C. §227(c)(5) separate from violations of the Federal Communications Commission's (FCC) national do-not-call registry, 47 C.F.R. § 64.1200(c)(2) and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), and regulations promulgated pursuant to the TCPA protection of telephone subscriber privacy rights provisions, 47 U.S.C. § 227(c)(1) to (4). In other words, there can be two violations per call, with damages of $3,000 per call.

As to the Federal Communications Commission's (FCC) national do-not-call registry, 47 C.F.R. § 64.1200(c)(2) and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), and regulations promulgated pursuant to the TCPA protection of telephone subscriber privacy rights provisions, 47 U.S.C. § 227(c)(1) to (4), 1-800 Remodel's conduct violates one or more of the following: (i) 47 C.F.R. § 64.1200(c)(2), by engaging in and/or causing a pattern or practice of initiating telephone solicitations to my cellphone while said number, at all times relevant, was listed on the Federal Trade Commission's do-not-call registry, 47 C.F.R. § 64.1200(d) by causing telephone solicitations to be made to my cellphone without first instituting procedures for maintaining a list of persons who do not wish to receive such calls; (ii) 47 C.F.R. § 64.1200(d)(1) by failing to provide, upon demand, a do-not-call policy; (iii) 47 C.F.R. § 64.1200(d)(3) by and through the course of initiating calls for the purposes of a telemarketing solicitation by repeatedly failing to honor do-not-call requests and continuing to call despite requests not to be called; (iv) 47 C.F.R. § 64.1200(d)(4) by failing to provide a telephone number or address. Any one of the violations above are grounds for statutory damages under 47 U.S.C. § 227(c)(5).

1-800 Remodel has conducted its business in complete disregard of the TCPA and MTSA, and its conduct in any event "caused the calls to be made." Even if another party made some of the calls on its behalf, it still cannot escape liability. Further, 1-800 Remodel, as well as its clients, may be held liable for 1-800 Remodel's calls, as it is clear that 1-800 Remodel acts as the agent of several companies[1] and as such, all are liable for the offending calls at issue, as well as calls made to those similarly situated.

Specifically, under Massachusetts law, as to torts other than negligence causing physical harm, "a principle [of a non-employee agent] is liable for the torts of his agent committed within the scope of his employment." *Red v. A.E. Little Co.*, 256 Mass. 442, 448, 152 N.E. 918, 920 (1926). See Am. Jur. 2d Agency § 264, p. 639 ("A principle is liable for the tortious acts of an agent which are done within the course and scope of the agent's employment."). Such torts include misrepresentation,[2] negligence,[3] invasion of privacy, and other intentional torts.[4] **The principal's liability for such tortious acts of its agents is exclusively vicarious, having been imposed by operation of law notwithstanding the principal's lack of fault or involvement in the actionable transaction**. *Medeiros v. Middlesex Ins. Co.*, 48 Mass. App. Ct. 51, 56-57, 716 N.E.2d

---

[1] It is expected that these companies, and others as determined, will be sent a demand, or at least a notice of litigation hold to preserve evidence related to all leads provided to them from 1-800 Remodel, until such time as this matter is fully resolved.

[2] See Restatement Third, Agency §§ 7.04, 7.08, comment c. See *Haskell v. Starbird*, 152 Mass. 117, 142 N.E. 695, 696 (1890); *Rousseau v. Gelinas*, 24 Mass. App. Ct. 154, 157-158, 507 N.E.2d 265, 268 (1987); *Makino, U.S.A., Inc. v. Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 313, 518 N.E.2d 519, 525 (1988); *Putnam v. DeRosa*, 963 F.2d 480, 483-484 (1st Cir. 1992) (applying Mass. law) (principal "is liable for harm flowing from the misrepresentations of its agents, made with its actual or apparent authority.").

[3] *New England Mica Co. v. Waltham Factories*, 301 Mass. 56, 60, 16 N.E.2d 81, 83 (1938).

[4] *Worcester Ins. Co. v. Fells Acres Day School, Inc.*, 408 Mass. 393, 404, 558 N.E.2d 958, 967 (1990) (assault); *Veranda Beach Club Ltd. Partnership v. Western Sur. Co.*, 936 F.2d 1364, 1376, 33 Fed. R. Evid. Serv. 809, 20 Fed. R. Serv. 3d 409 (1st Cir. 1991) (applying Mass. law) (forged bonds).

1076, 1080 (1999).

The TCPA, 47 U.S.C. § 227(c)(5), creating a private cause of action for violations of the Federal Communications Commission's ("FCC") national do-not-call registry, 47 C.F.R. § 64.1200(c)(2), and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), imposes liability on the telemarketer, and on the person or entity on whose behalf the telephone calls were made. In addition to the caller, the statutory and regulatory language creates vicarious liability in the seller for the calls made by its agents.

Specifically, under the TCPA, as interpreted by the FCC under federal common law, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995). In 2008, the FCC reiterated, "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991. Request of ACA International for Clarification and Declaratory Ruling, CG 02-278, 23 F.C.C.R. 559 at ¶10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of a Robocall sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)). In May of 2013, the FCC reinforced this issue. See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, --- FCC Rcd. --- (F.C.C. May 9, 2013) (hereinafter "2013 FCC Ruling Order") (clarifying that "a seller … may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services."). Where profitable businesses hire others in an effort to hide their role in telemarketing campaigns, the FCC has ruled, in a wide variety of situations, that companies may be held vicariously liable for calls made on their behalf, including when the companies knowingly benefit from the calls. *See In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C.R. 6574, 6588 (2013) ("FCC Vicarious Liability Order"). As the FCC explained:

> [T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Id; see also id. at 6593 ("we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that

telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised")"

1-800 Remodel is properly deemed to have initiated all the calls preceding its own, and is liable under a number of theories even if it did not directly place all the calls, and may be held liable for the calls it made directly, as can its principles, i.e., each of those in which it acts as agent or for which 1-800 Remodel solicits business. Further, based on the facts and information obtained, the conduct was perpetrated in the course of a conspiracy, and in such instance, all are joint and severally liable. Although the calls preceding the direct calls from 1-800 Remodel may have been made outside the United States, they still violate the TCPA (See 47 U.S.C. § 227(b)), to which 1-800 Remodel and its principles are liable.

The TCPA, 47 U.S.C. 227(b)(3) provides consumers harmed by violations of the TCPA with the right to sue, seeking statutory damages of $500 per violation, and the court can order triple damages for willful or knowing violations, or $1,500 per call. "Willfully or knowingly" requires only the intent to make calls, regardless of any intent to violate the TCPA. *Standard Mutual Ins. Co. v. Lay*, 2012 WL 1377599 (4th Dist. April 20, 2012). Under the TCPA, corporate officers may be held personally liable even though acting on behalf of the corporation. See e.g., *Hoops & Associates, P.C. v. Financial Solutions and Associates, Inc.*, 395 S.W. 3d 594 (Mo. Ct. App. E.D. 2013) reh'g and/or transfer denied (Mar. 14, 2013) and transfer denied, (Apr. 30, 2013).

1-800 Remodel, its agent, and its principles for which it calls on behalf, willfully and knowingly violated the TCPA not less than fifty (50) times, i.e., not less than twenty-five (25) calls to my number using ATDS and/or prerecorded message (twenty-five (25) violations), and twenty-five (25) calls to my number while on the do-not-call registry (twenty-five (25) violations), all without consent, warranting statutory damages of not less than $25,000 for negligent violation of the TCPA, subject to trebling for willful and knowing violations thereof, or $75,000 for willful or knowing violations of the TCPA, and then 1-800 Remodel called not less than four (4) times, using ATDS, while on the do-not-call registry, without consent, knowingly and willfully, constituting not less than eight (8) violations, warranting statutory damages of not less than $12,000 under the TCPA alone. Here, without question, 1-800 Remodel's conduct was willful and knowing in all respects as to al calls, entitling me damages under the TCPA of $87,000.

1-800 Remodel also violated the MTSA by calling while on the do-not-call registry, and separately, by causing the use of deceptive or "spoofed" numbers that concealed the identity of the initial callers, entitling me to damages of not less than $5,000.00 per violation. Here there have been several. See G.L. c. 159C § 8. The MTSA provides separate and independent grounds for jurisdiction over out-of-state or non-resident defendants to an action or proceeding thereunder. See G.L. c. 159C § 13.

1-800 Remodel also violated the Massachusetts Code of Regulations promulgated under G.L. c. 159C; 201 CMR 12.02 (6), which states that "[a]ll telephone solicitors engaging in unsolicited telephonic sales calls of Massachusetts consumers must institute

procedures for honoring the list of Massachusetts consumers who have elected not to receive unsolicited telephonic sales calls in compliance with G.L. c. 159C and 201 CMR 12.00 et seq.," and further, that "[a]ll telephone solicitors engaging in unsolicited telephonic sales calls of Massachusetts consumers shall, at the beginning of such call, disclose [(b) the correct name of the telemarketing company that employs the individual telemarketer who is making the call; [and] (c) the correct name of the ultimate seller whose goods or services are being offered by means of the telemarketing call] … within the first minute of a telephonic sales call …," which 1-800 Remodel's call center(s) failed to do, and which itself failed to do.

The calls to my cellphone attempting to solicit sales were done in both an unfair and deceptive manner, have been harassing, interfered with sleep, invaded privacy, caused wear and tear, battery usage, and use of paid-for cell services, causing expense adequate to have standing under G.L. c. 93A. In addition, because 1-800 Remodel violated the Telemarketing Sales Rule 16 CFR 310 et seq. ("TSR") in several respects (which also provides a private right of action), 1-800 Remodel also *per se* violated G.L. c. 93A. Aside from the calls themselves, the conduct of 1-800 Remodel is grossly unfair and deceptive whereby a court would likely award punitive damages under G.L. c. 93A.

Specifically, 1-800 Remodel violated the TSR by "[f]ailing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; … the name of the seller … on behalf of which a telemarketing call is placed, and the sellers customer service telephone number…" 16 CFR 310.4 (a)(8). As a further example, 1-800 Remodel violate the TSR by engaging in a "Pattern of calls." Specifically, under 16 CFR 310.4 (b)(1) of the TSR, "it is an abusive telemarketing act or practice and violation of [the TSR] for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct: (i) causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number, and … (iii) initiating any outbound telephone call to a person when: (A) That person previously has stated that he or she does not with to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered … (B) That person's telephone number is on the 'do-not-call' registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of good or services unless the seller or telemarketer: (1) Can demonstrate that the seller has obtained the express agreement <u>in writing</u>, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature of that person; or (2) Can demonstrate that the seller has an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls under paragraph (b)(1)(iii)(A) of this section …"

A violation of the TSR is, according to the Code of Massachusetts Regulations ("CMR"), a per se violation of G.L. c. 93A. The CMR states in relevant part:

Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of G.L. c. 93A, § 2 if: (1) It is oppressive or otherwise unconscionable in any respect; or … (3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of thus Commonwealth protection; or (4) It violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of G.L. c. 93A, §2.

940 C.M.R. 3.16

Accordingly, in addition to damages under the TCPA and MTSA, this letter makes demand for damages under G.L. c. 93A in the amount of $10,000, which includes the time and expense researching and investigating in order to identify the offender and to write this letter and attempt to get the calls to stop, which is compensable under G.L. c. 93A. *See Casavant v. Norwegian Cruise Line, Ltd.*, 76 Mass. App. Ct. 73, 79, 919 N.E.2d 165, 170 (2009). Review granted, 456 Mass. 1106, 925 N.E.2d 864 (2010) (litigation requiring expense of "time, money and effort" constitutes "injury" under G.L. c. 93A).

**DEMAND**

This letter demands 1-800 Remodel immediately provide its do-not-call policy, immediately stop calling my cellphone, immediately provide the identities and contact information of all its agents or companies calling on behalf of or acting on behalf of 1-800 Remodel (if any), and that 1-800 Remodel immediately notice its commercial liability insurer and provide that insurer's name and contact information.[5]

In addition, this letter demands:

(i) Under the TCPA, $87,000 in statutory damages, i.e., $1,500 for each of the <u>not less than</u> fifty-eight (58) willful and knowing violations of the TCPA, within five days;

(ii) Under the MTSA, $20,000 in statutory damages **as a compromise** for the numerous knowing and willful violation of two separate provisions of the MTSA, by your agents and directly, within five days;[6] and

(iii) Under G.L. c. 93A, $10,000 in actual damages, or otherwise a reasonable settlement offer within 30 days.

---

[5] Failure to timely notice a liability insurer of a claim may result in its refusal to defend the claim.

[6] **Aside from a potential TCPA class action under federal law, there is a strong basis to assert a MTSA class action under Massachusetts law, which would – given the damages available thereunder – subject 1-800 Remodel and its officers to severe liability.**

**While an action under the TCPA and MTSA may commence immediately against all parties, including all of 1-800 Remodels clients, in the event 1-800 Remodel wishes to resolve this matter, no other parties will noticed of these claims, or any action brought, before the expiration of five (5) days.**

With respect to the G.L. c. 93A claims, if 1-800 Remodel believes the demands are unreasonable, it may investigate the facts and the law and counter with a reasonable offer of settlement within, as noted above, 30 days.

## LITIGATION HOLD NOTICE

1-800 Remodel, and each of its officers, directors, administrators, employees, subcontractors, shareholders, agents, insurers, and successors and assigns as the case may be, and any other party who may have materials relevant to the claims described in this demand letter (the "Litigation Hold Parties"), are hereby put on notice of litigation hold.

This notice extends to <u>ALL</u> the "Litigation Hold Parties" as defined *supra*. It is the responsibility of the recipient of this notice of litigation hold to properly identify and notice <u>ALL</u> the Litigation Hold Parties and immediately and properly notice them.

Any and all materials or records relating to the subject of this demand letter must be retained and preserved, including but not limited to all emails, call logs, audio recordings, contracts with third parties or its agents as well as the audio records of your agents, and any alleged prior express written consent (which would be a fraud if it is claimed to exist). This notice extends to information in 1-800 Remodel's custody and control relating to any and all claims by any person, company, or entity, accusing it of violating the TCPA, MTSA, or the consumer protection act of any state, or that which may be relevant to this claim. The scope of this litigation hold is broad, as aside from this claim, a class action claim is seriously being contemplated.

**Accordingly, the Litigation Hold Parties must not destroy, conceal or alter any paper or electronic files or communications or data generated by and/or stored on any computer or storage media (e.g. hard disks, thumb drives, compact disks, tapes, cloud storage, etc.). Such files shall be considered to include all those devices on which communications involving company business take place, such as but not limited to computer consoles, cell phones, smart phones, tablets, laptops, whether stored on company site or elsewhere. Communications subject to this notice of litigation hold shall include but are not limited to that sent <u>and</u> received via e-mail, chat, texts, blogs, telephone, and via websites, and including communications such as voicemails. Data shall include but are not limited to contracts with agents or third parties, contracts with customers, call records, marketing records, client communications and records, and accounting records, and all complaints, ("Discoverable Data"). Discoverable Data shall include security records as well as past, present, and future audio and/or video surveillance of those areas where Discoverable Data is kept and where access may be gained. Any changes in security policies or practices that would degrade the security of anything that may constitute**

**Discoverable Data will be met with extreme scrutiny and would likely result is severe consequences.**

Electronic documents and the storage media on which they reside contain relevant discoverable information beyond what may be bound in printed documents, e.g., author, creation dates, and other metadata. Therefore, even where a paper copy exists, the electronic versions are still subject to this notice of litigation hold. Moreover, paper documents may contain unique information created after they were printed (e.g., handwriting, signatures, marginalia, drawings, annotations, or highlighting, etc.), and so even while electronic versions of these documents exist, these paper versions are relevant and subject to this notice of litigation hold.

Careful attention should be paid to the proper continued security and preservation of that involving any alleged "prior express written consent" that may be claimed (and which would be a fraud if it is claimed to exist) in any defense to the claims herein, with preservation of evidence to include: (i) authentication, i.e., the means of authenticating the identity of the person allegedly signing; (ii) security, i.e., the binding of the alleged signature to the alleged document and proof of non-alterability after the alleged signature has been fixed thereto; and (iii) record retention, i.e., that involving secure storage and those who have access, and the records and communications created as a result of any prior express written consent.

Although a motion may be brought for an order preserving documents and other data from destruction, your obligation to preserve documents and other data arises independently from any filing of a compliant, motion, or court order. In other words, the filing of a complaint or service thereof is not a prerequisite to compliance with a litigation hold obligation. Specifically, the duty to preserve evidence arises when that party knew or reasonably would have known that such evidence might be relevant to a possible action, and most certainly, as is the case here, at the time a party is on notice. *See, e.g., Linnen v. A.H. Robins Co., Inc.*, 10 Mass. L. Rptr. 189, 1999 WL 462015 (Mass. Super. Ct. 1999) (Brassard, J.); *Townsend v. American Insulated Panel Co., Inc.*, 174 F.R.D. 1, 3, 37 Fed. R. Serv. 3d 1166 (D. Mass. 1997)

1-800 Remodel must take every reasonable step to preserve the materials subject to this notice of litigation hold until the final resolution of this matter. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup media recycling policies. With regard to data created subsequent to the date of this letter, relevant evidence should not be destroyed and you are to take the appropriate steps required to avoid destruction of such evidence. It would be wise to seek legal advice to ensure your compliance with this notice of litigation hold.

**WARNING NOTICE**

Should it be discovered that 1-800 Remodel failed to comply with the above notice of litigation hold, such would have severe consequences. With respect to court proceedings against 1-800 Remodel, the court may award sanctions up to default

judgment. See *Fletcher v. Dorchester Mut. Ins. Co.*, 437 Mass. 544, 551, 773 N.E.2d 420, 426 (2002) (saying that "if spoliation occurs in violation of a discovery order, various sanctions, including dismissal or judgment by default, may be imposed for that violation."); *Keene v. Brigham and Women's Hosp., Inc.*, 439 Mass. 223, 234-37, 786 N.E.2d 824, 833-35 (2003) (saying that in "the spoliation context (like in the discovery context), a judge has broad discretion to impose a variety of sanctions against the defendant for the breach of its statutory duty to retain the plaintiff's missing records … default judgment is committed to the sound discretion of the judge, with such sanction of default judgment being available upon a finding of willfulness or bad faith.)

**Should 1-800 Remodel fail to respond within <u>five days</u> to the TCPA and MTSA demands, notice will be made to all relevant parties, and an action will be brought against all parties seeking the all statutory damages and available remedies. Should 1-800 Remodel fail to respond within <u>30 days</u> to this G.L. c. 93A demand, a an action will be brought against 1-800 Remodel and officers in their individual personal capacities seeking, *inter alia*, treble actual damages as to each officer. In addition, court costs, and attorney fees will be sought as applicable.**

Be advised, under G.L. c. 93A, corporate officers may be held personally liable without needing to pierce the corporate vale. See *Nader v. Citron*, 372 Mass. 96, 360 N.E.2d 870 (1977) (abrogated on other grounds by, *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 888 N.E.2d 879 (2008)). Specifically, "corporate officers can be held personally liable for participating in unfair and deceptive business practices." *Bolen v. Paragon Plastics*, Inc., 754 F. Supp. 221, 228 (D. Mass. 1990), citing *Nader v. Citron*, 372 Mass. 96, 103, 360 N.E.2d 870, 875 (1977) (abrogated on other grounds by, *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 888 N.E.2d 879 (2008)) and *Manning v. Zuckerman*, 388 Mass. 8, 10, 444 N.E.2d 1262, 1263 (1983); See also, *Hoch v. Porrazzo*, 2005 Mass. App. Div. 61, 62, 2005 WL 1383340 (2005) and cases cited; *Shaw v. Yellin*, 2008 Mass. App. Div. 141, 2008 WL 2627637 (2008), decision aff'd, 75 Mass. App. Ct. 1103, 912 N.E.2d 1040 (2009) (personal liability of corporation's shareholders and officers for unfair and deceptive acts under G.L. c. 93A); *Musi v. Blair*, 2011 Mass. App. Div. 51, 2011 WL 704745 (2011) (liability under G.L. c. 93A for one who acted on behalf of company and played a key role in its operation); *Adelphia Agios Demetrios, LLC v. Arista Development*, LLC, 2013 WL 1622675 (D. Mass. 2013) (case involves G.L. c. 93A claims against officer of an LLC); *George Hyman Const. Co. v. Gateman*, 16 F. Supp. 2d 129 (D. Mass. 1998); See also *Shaw v. Yellin*, 2008 Mass. App. Div. 141, 2008 WL 2627637 (2008), decision aff'd, 75 Mass. App. Ct. 1103, 912 N.E.2d 1040 (2009)

1-800 Remodel's principle officers may be liable for claims under G.L. c. 93A, as well as under the TCPA and MTSA, whereby claims against the principle officers may be brought, these officers are also subject to personal jurisdiction in Massachusetts under the explicit statutory provisions of the MTSA, as well as the provisions of the Massachusetts Long Arm Statute, G.L c. 223A. Accordingly, if 1-800 Remodel fails to respond favorably and it becomes necessary to file an action, a complaint will be filed naming 1-800 Remodel's officers in their personal capacities.

It is clear that 1-800 Remodel has engaged in a conspiracy and a pattern of reckless, willful, and knowing illegal conduct. Accordingly, absent a response within five days to the TCPA and MTSA demands, a class action will seriously be considered, with me volunteering as class representative. While counsel has not yet been engaged, anticipating the possibility of an inadequate response from 1-800 Remodel before the expiration of five days, this letter is also being copied to counsel for his review.

**Please <u>do not</u> sent paper correspondence to either of my Martha's Vineyard Residences. Please direct paper correspondences, if any, to my all-season mailing address at 103 Prospect Street, Wakefield MA 01880, unless otherwise noticed.**

Very Truly Yours,

Robert A. Doane

cc: Richard Reiling, Esq.
     David Pastor, Esq.